[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11939

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALEXANDER OLSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00020-TFM-N-7

_____

Before BRASHER, ED CARNES, and WILSON, Circuit Judges.

ED CARNES, Circuit Judge:

Alexander Olson was one of eight people who conspired to force Walmart to change many of its policies, practices, and ways of doing business by setting fires inside four of its stores in Alabama and Mississippi during business hours.

For Olson's role in the conspiracy, which included active participation in setting the fires, he was indicted on two counts of maliciously setting fires to "damage and destroy, and attempt to damage and destroy, by means of fire, buildings and other personal and real property," in violation of 18 U.S.C. § 844(i), and with one count of conspiracy to do that, in violation of 18 U.S.C. § 844(n). As ninety-seven percent of federal criminal cases do, this one settled with a plea bargain.[1] In return for his guilty plea to the conspiracy charge, the government moved to dismiss the remaining charges and recommended a sentence of 60 months imprisonment. The district court granted the government's motion to dismiss the other charges and adjudicated Olson guilty of the conspiracy charge. It didn't, however, follow the government's sentence recommendation.

Olson's advisory guidelines range was 60 months imprisonment, which was also the statutory mandatory minimum sentence.

---

[1] U.S. Sentencing Comm'n, 2023 Sourcebook of Federal Sentencing Statistics, Fiscal Year 2023, at 32 (2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-source-books/2023/2023_Sourcebook.pdf (reporting that 97.2 percent of federal criminal cases settled with a plea bargain in the fiscal year 2023).

The statutory maximum sentence was 240 months. The district court imposed a sentence of 180 months imprisonment to be followed by three years of supervised release.

Olson appeals his sentence, contending that the district court erred by not clearly specifying whether the sentence above the guidelines range was the result of a departure or a variance. He also contends that his sentence of 180 months imprisonment is substantively unreasonable. Because the district court stated it would have imposed a sentence of 180 months imprisonment "whether an upward departure or a variance," and the sentence it imposed is substantively reasonable under either framework, we affirm.

## I. BACKGROUND

During a two-week period from the end of May 2021 through the beginning of June 2021, Olson conspired with seven others to set fires in four different Walmart stores. They set the fires during business hours while customers, children, and employees were still inside the stores. The fires caused confusion, chaos, and fear.

### A. THE FOUR FIRES[2]

---

[2] On May 25–26, 2023, the district court held a joint evidentiary hearing in which the government called witnesses to testify about the extent of each co-conspirator's involvement (including the extent of Olson's involvement) in the Walmart fires. We recount the relevant, undisputed facts from that hearing.

In early 2021, Alexander Olson moved to Lillian, Alabama, with his brother, Quinton Olson, and his friend, Michael Bottorff, who became two of his co-conspirators, to live in a house already occupied by his other soon-to-be co-conspirators, Jeffrey Sikes, Erica Sikes, Sean Bottorff, Jenna Bottorff, and Mikayla Scheele. After moving in, Olson became involved in meetings (that sometimes lasted all day) in which the eight co-conspirators planned the Walmart fires.

Jeffrey Sikes was unquestionably the leader of the pack. On the night before the first fire, he instructed co-conspirators Olson, Sean Bottorff, and Mikayla Scheele to pack bags with tactical gear and clothes in preparation for the next day's operation. When that day arrived, Olson, Scheele, and Sikes entered the first Walmart during normal business hours, while Bottorff stayed in the getaway car. Sikes told Olson and Scheele that once the three of them were inside the store, they should disperse, douse store merchandise with lighter fluid, and then set the merchandise on fire. Each one of them, including Olson, lit a fire inside the store. As those three fires broke out and spread, there was "mass chaos" as customers, including young children, and employees scrambled to get out of the store.

The next day, Olson and Scheele set fire to another Walmart in Mobile, Alabama. They followed a similar pattern to the one they had used the day before: they entered the store separately, found each other once inside, and then split up as Scheele set fires. As the two of them left the store, there were "a lot of people

outside" as everyone tried to escape the burning store. The alarms were loud, the smoke was thick, people were scared and screaming.

On the way back home from that second fire, the group stopped at a different Walmart so that Olson could buy a cell phone. They planned to use that phone to anonymously send a document entitled "Declaration of War and Demands for the People" to various media outlets.

The "Declaration of War" characterized Walmart's policies and business practices as "a crime against humanity" that "validate[d]" the conspirators' "action of war against them." The document included seven demands that Walmart would have to meet for the fires at its stores to stop:

- Pay its employees $18/hour, regardless of full-time status (Demand 1)
- Pay 100% of each employee's health insurance premium (Demand 2)
- Give new moms six months maternity leave and new dads two months paternity leave (Demand 3)
- Pay its CEO no more than five times as much as its lowest-earning employee (Demand 4)
- Implement a climate plan (Demand 5)
- Supply 900 ready-to-eat meals (900 from each store) to people in need each day (Demand 6)
- Produce half of its goods in the United States within five years (Demand 7)

About a week later, Jeffrey Sikes, Olson, Scheele, and Sean Bottorff traveled to Mississippi. Olson and Scheele set the group's

third fire in a Walmart in Gulfport.  The resulting scene was just as "chaotic" as the two previous ones.

That wasn't the last crime the group committed or attempted.  After the third Walmart fire, they stopped at a bank.  With Olson in the car, Sikes strapped on Scheele what looked like a suicide vest, which "had three or four metal pipes on it with wires and then a phone connected to it."  Sikes instructed her to go inside the bank wearing the vest and rob the bank.  Olson watched without intervening.  Scheele ultimately "broke down" and couldn't bring herself to enter the bank.  Sikes yelled at her but he didn't put the vest on anyone else, and the group abandoned any attempt to rob that bank.  As they left, Sikes pointed out an armored car at the bank and commented that Scheele "probably would have been shot" if she had actually gone in the bank strapped with the vest.

The group turned its attention back to Walmart.  That same night, Olson and Scheele set fire inside a fourth Walmart in Biloxi, Mississippi.  Although it was late at night, customers and children were still inside when the fire started.  That was the group's last fire.

## B.  SENTENCING

After he pleaded guilty to one count of conspiracy to set the Walmart fires and the other charges against him were dismissed, Olson was sentenced.  His presentence investigation report (PSR) recommended a total offense level of 21 and a criminal history category of II.  Those factors would have resulted in a guideline range of 41 to 51 months.  But the statutory minimum sentence was

60 months, which lifted Olson's guidelines range to 60 months. Olson asked for that sentence and both the PSR and the government recommended it. Restitution was calculated to be $7,295,533.23, which covered repair costs and merchandise loss resulting from the fires at the four Walmart stores.

As to Olson's personal history, the PSR recounted that, when he was just two years old, he was sexually abused at a daycare center. His mother told the probation officer that Olson does not like to speak about the incident. And she told the defense's retained psychologist that Alexander did not remember the alleged molestation "at the time or later in life." His parents divorced when he was three years old, and he lived with his mother until the age of fourteen. After that, he lived with his father until he was eighteen years old. During that time, while under the influence of alcohol, his father physically and verbally abused him.

After Olson joined the United States Navy in 2017, he was diagnosed with "adjustment disorder with depressed mood," which ultimately led to his "uncharacterized (entry level separation) discharge" after only two months in the Navy. After his discharge from the Navy, Olson twice received inpatient mental health treatment — once in in May 2018 after expressing suicidal thoughts and again in December 2019 after reporting he had attempted suicide.

Before the sentence hearing, Olson filed with the court a copy of a report from Dr. James Stefurak, a licensed psychologist. That report recounted Olson's personal history and expressed

opinions about his mental and emotional instability. The report stated that Olson had a strong need for male validation. It also expressed the view that Olson "remains at risk of being drawn into behaviors that could lead to recidivism but is unlikely to initiate or voluntarily seek out criminal and norm-violating behaviors in the future."

Over the government's objection, the district court considered Dr. Stefurak's report. In deciding to do so, the court referred to the "hold" the group's leader, Jeffrey Sikes, had over each member of the group and noted that, "but for Mr. Sikes, [these fires] would not have occurred."

Olson argued that the mandatory minimum guidelines range sentence of 60 months imprisonment was appropriate based on the nature and circumstances of the offense, specifically the influence that codefendant and group leader, Jeffrey Sikes, had on Olson's actions. He asked the court to ensure that his sentence reflected that he was less culpable than Sikes. Olson asserted that because of his own young age (22 years old at the time the crimes were committed), his vulnerable mental state, and the unlikelihood that someone with Sikes' charisma would take hold of him again, he had a low risk of recidivism.

Olson called his aunt as a witness at the hearing, and she spoke well of his character. Then in allocution, he expressed his remorse for his actions and promised that he would not reoffend.

In sentencing Olson, the court found that co-conspirator Jeffrey Sikes was, in fact, the most culpable person in the conspiracy

and that distinctions should be drawn between Sikes and the other members of the conspiracy, including Olson. Still, the court stated that several factors "t[ook] this case outside the heartland of regular arson guidelines." It noted the reality that the conspiracy involved more than one fire, which meant Olson had conspired and acted to put many people at risk. The court was "shocked that there was no loss of life" due to the fires and noted that the fires had caused great financial loss to Walmart.

The court also took into account the group's motives for setting the fires. It explained that the guidelines did not account for the fact that the crimes had a "political agenda," which the group had set out in its "Declaration of War and Demands for the People" as designed to radically affect the conduct of Walmart as an ongoing business. The court also noted the attempt to manipulate the media by sending to various outlets the group's "Declaration of War and Demands for the People." And it emphasized Olson's presence and failure to protest when Sikes strapped what looked like a suicide vest to Scheele and ordered her to rob a bank. That, the court reasoned, demonstrated Olson's willingness to condone that type of "very dangerous activity."

Speaking directly to Olson, the court held him accountable for his criminal conduct, notwithstanding Sikes' influence on him: "While Mr. Sikes has powers of persuasion and leadership, he didn't force you to participate in this. You chose to participate in it, and I believe you knew, when you were participating in this, that it was wrong." The court rejected Olson's attempt to blame anyone

else for his participation in the fires: "[There isn't] anything that made you do what you did other than you chose to become involved in this plot and its objectives."

The court sentenced Olson to 180 months imprisonment, three years of supervised release, and $7,295,533.23 in restitution to Walmart, to be paid jointly and severally with his codefendants. The court elaborated:

> I find the advisory guidelines range is not appropriate to the facts and circumstances of this case, and the sentence here, *whether an upward departure or a variance*, I find appropriate . . . . And I will also include the extensive damage that was done as a result of these fires indicates that this is a sentence that should be imposed at a level greater than what the guidelines will require.

The court stated that the sentence it imposed properly accounted for "the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation." It had considered the plea bargain in determining Olson's sentence, but decided that the recommended sentence of 60 months imprisonment would not fully account for the number of fires and the amount of damage caused. The court explained that, particularly because four separate fires had been set, any one of the § 3553(a) factors it had discussed would have been independently sufficient to justify Olson's sentence, and "certainly" when considered together, they were sufficient to justify it.

23-11939                Opinion of the Court                11

Olson objected to the sentence, arguing that it was substantively unreasonable. He asserted that the court did not account adequately for "the varying degrees of culpability" among the different co-conspirators. He argued that group leader Sikes received what Olson characterized as a similar sentence of 216 months imprisonment despite Sikes' greater culpability. Olson also contended that his own sentence did not reflect the fact that he had mental health issues, joined the conspiracy late, and was "under the substantial influence of Sikes and the other adults in the conspiracy." (Olson himself was an adult — 22 years old — when he participated in the criminal conduct. The court overruled Olson's objection.

In its Statement of Reasons entered seven days later, the court identified the sentence as a departure, citing U.S.S.G § 5K2.5 (Nov. 2022) (property loss) and § 5K2.0 (aggravating circumstances).[3] The court explained the reason for the "departure" as follows:

> The Court finds that the advisory guideline range is not reasonable, based on the facts and circumstances of the case. The Court grants an upward departure based on the inadequacy of the guidelines to reflect for four separate fires, as part of the instant federal offense. The

---

[3] Olson did not contend before the district court or before this Court that the district court procedurally erred by failing to provide adequate notice before departure. As a result, that issue is not before us, and we express no opinion about it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014).

sentence imposed addresses the seriousness of the offense and meets the sentencing objectives of deterrence, incapacitation, and punishment.

## II.  STANDARD OF REVIEW

We review the substantive reasonableness of a sentence only for abuse of discretion. *United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023).  No matter whether a sentence imposed outside the recommended guidelines range is a variance or departure, we review "all sentences, whether within or without the guidelines, . . . only for reasonableness under an abuse of discretion standard." *United States v. Irey*, 612 F.3d 1160, 1186 (11th Cir. 2010) (en banc); *see also United States v. Sanchez*, 586 F.3d 918, 935 (11th Cir. 2009).

## III.  DISCUSSION

Olson argues the district court erred in two ways.  First, he contends that the court failed to clearly define whether the upward deviation was an upward variance or departure.  Second, he contends that a sentence of 180 months imprisonment, 120 months above the mandatory minimum and the top of the guidelines range, was an abuse of discretion because it's substantively unreasonable.

### A. DEPARTURE OR VARIANCE?

The parties disagree about whether Olson's sentence is the result of an upward departure or an upward variance.  We don't believe that it matters.

Even though "they may lead to the same result (a sentence outside the advisory guidelines range) a variance and a departure reach that result in different ways." *United States v. Hall*, 965 F.3d 1281, 1295 (11th Cir. 2020). As we explained in *Hall*, when a district court "determines that a guidelines sentence will not adequately further the purposes reflected in 18 U.S.C. § 3553(a)," it may vary from the guidelines range and impose a higher or lower sentence. *Id*. That's a variance. *See id*. But when the court departs from a guidelines range sentence, it relies on the departure provisions in the guidelines. *See id*. ("A departure, by contrast, is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines, including the departure provisions.") (quotation marks omitted). Advance notice to the parties is generally required for a departure but not for a variance.[4] *Id*.

"To determine whether the district court varied or departed, we look, unsurprisingly, to the court's reasoning and what it said about that reasoning." *Id*. at 1296. A primary indicator that the court departed is if "it cited a specific guidelines departure provision in setting the defendant's sentence." *See id*. If, instead, the court's "rationale was based on the § 3553(a) factors and a

---

[4] As we have already noted, the issue of notice is not before us. *See supra* at n.3.

determination that the guidelines range was inadequate," then that indicates a variance. *See id.*

Based on the record in this case, the 120-month deviation from the guidelines recommendation could be characterized as either an upward departure or upward variance. At the sentence hearing, the court discussed the § 3553(a) factors and some other details about the crimes that took the "case outside the heartland of regular arson guidelines." But in its Statement of Reasons entered later, the court cited specific departure provisions as support for the upward deviation from the guidelines.

In some cases determining whether the court imposed a departure or variance may matter, but in others the lack of clarity, or even confusion about, which framework was being used won't matter. *See United States v. McKinley*, 732 F.3d 1291, 1298–99 (11th Cir. 2013) (holding that the sentence was substantively reasonable regardless of whether the court imposed it as (a) an upward departure based on the defendant's extensive criminal history or (b) an upward variance based on the need to protect the public, promote respect for the law, and deter others).

Olson's case is like *McKinley*. As in that case, it's unnecessary for us to resolve the variance-or-departure issue here because "a decision either way will not affect the outcome of this case." *United States v. Keene*, 470 F.3d 1347, 1348 (11th Cir. 2006); *see id.* at 1348–50 (concluding that that this Court need not decide the propriety of a sentence enhancement where the district court stated that it would have imposed the same sentence without the enhancement

and the sentence was substantively reasonable without it); *United States v. Goldman*, 953 F.3d 1213, 1221–23 (11th Cir. 2020) (deciding "not [to] dwell" on the correctness of the district court's reliance on a particular guidelines enhancement provision "because the court stated that it would have imposed the same sentence regardless" of its applicability and the sentence was substantively reasonable) (citing *Keene*, 470 F.3d at 1349); *United States v. McLellan*, 958 F.3d 1110, 1116 (11th Cir. 2020) ("We decline McLellan's invitation to wade into the depths of evaluating the applicability of the ACCA, because the record is clear that the district court would have imposed the same 180-month sentence regardless of whether the mandatory minimum applied.").

Those decisions and the rule of law they embody are a species of the harmless error doctrine. If the asserted error did not matter to the result in the district court, whether there was error doesn't matter in the appeal. *See generally United States v. Roy*, 855 F.3d 1133, 1142–43, 1167–68 (11th Cir. 2017) (en banc) (discussing the breadth and strength of the harmless error rule).

A decision about a disputed guidelines issue will not affect the outcome either way where "(1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *Goldman*, 953 F.3d at 1221. Under those circumstances, any error in the court's application of a guidelines issue, including a departure issue, is harmless. *See id.*; *see also Keene*, 470 F.3d at 1349.

That harmlessness analysis applies equally in this context where the disputed guidelines issue is whether the upward deviation is a departure or a variance. *See United States v. Livesay*, 525 F.3d 1081, 1091–92 (11th Cir. 2008). In *Livesay*, we reviewed for harmlessness a district court's incorrect application of a U.S.S.G. § 5K1.1 departure. The court had stated at the sentence hearing, "If I'm wrong on the extent of the departure which I have just made, I believe that the sentence I'm about to impose is the most appropriate sentence in this case . . . ." *Id.* at 1089. We determined that the district court had procedurally erred by basing "the extent of its § 5K1.1 [downward] departure on an impermissible consideration." *Id.* at 1092 ("[T]he district court should not have considered Livesay's repudiation of or withdrawal from the conspiracy in determining the extent of its § 5K1.1 departure"). But we concluded that procedural error by itself did not justify reversal. *See id.* (citing *Keene*, 470 F.3d at 1349).

We reasoned in *Livesay* that the district court's statement at the sentence hearing demonstrated that "even without any . . . departure, the district court *still would have varied* . . . from the advisory Guidelines range . . . based on the § 3553(a) factors." *Id.* (emphasis added). For that reason, the court's error in treating the downward adjustment as a departure was harmless, and we reviewed the sentence as if the court had imposed a variance instead of a departure. *See id.*; *see also id.* at 1293–94 (vacating and remanding after attempting to review the sentence as a variance and reasoning that we could not conduct meaningful appellate review of the sentence as a variance because the district court "failed to give

*any explanation* of its reasons" for the significant variance imposed) (emphasis added).

In keeping with *Keene* and *Livesay*, the most important statement of the district court in sentencing Olson was this one: "I find the advisory guidelines range is not appropriate to the facts and circumstances of this case, and the sentence here, *whether an upward departure or a variance*, I find appropriate inasmuch as those things [the facts meriting the departure or variance] that I've already listed." (Emphasis added.) Plainly, that means the district court would have imposed the same sentence whether it did so through upward variance or upward departure. *See Keene*, 470 F.3d at 1349; *Goldman*, 953 F.3d at 1221; *Livesay*, 525 F.3d at 1092. So, Olson's first challenge to his sentence, that the court erred by failing to clearly define whether it departed upward or varied upward, does not affect the outcome of this appeal — so long as the sentence imposed is substantively reasonable. *See Goldman*, 953 F.3d at 1221. That issue is next.

B. SUBSTANTIVE REASONABLENESS OF THE SENTENCE

We analyze Olson's sentence for substantive reasonableness first as a variance, and then as a departure. We find it substantively reasonable whether resulting from an upward variance or an upward departure.

1. Substantive Reasonableness — Variance

A district court must consider the 18 U.S.C. § 3553(a) factors "in determining the particular sentence to be imposed." 18 U.S.C.

§ 3553(a).[5] In the challenge to his sentence, Olson bears the burden of showing that it "is unreasonable in light of the facts of this case and the § 3553(a) factors." *See Hall*, 965 F.3d at 1297. "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Suarez*, 893 F.3d 1330, 1337 (11th Cir. 2018) (quotation marks omitted). A district court does not have to give all the factors equal weight, and it has discretion "to attach great weight to one factor over others." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotation marks omitted).

Absent a procedural error, and none is present here, we will vacate a defendant's sentence only "if we are left with the definite

---

[5] Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed [treatment]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement (A) issued by the Sentencing Commission . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016) (quotation marks omitted). "A sentence well below the statutory maximum indicates reasonableness." *United States v. Thomas*, 108 F.4th 1351, 1357 (11th Cir. 2024) .

Olson challenges the weight the district court gave to certain factors. He argues that the court ignored: (1) mitigating circumstances, including information about his personal history included in the PSR and details contained in the psychologist's report that he filed with the court; (2) that he was less culpable than Sikes; (3) his assertions about his low chance of recidivism; and (4) the influence of Sikes' "powers of persuasion and leadership" on Olson's actions.

Each of Olson's arguments of procedural error fails because the district court did explicitly consider all of those circumstances and facts that Olson says it ignored. First, the court *did* consider his mitigating circumstances as detailed in the PSR and in the psychologist's report. Second, the court *did* consider the relative culpability of Olson and Jeff Sikes — and notably *did* sentence Olson to a shorter sentence than Sikes. Third, the court *did* consider his argument that he had a low chance of recidivism. Fourth, the court *did* consider the "powers of persuasion" that Jeff Sikes exercised over Olson.

At its core, Olson's arguments are less about a failure to consider factors than about the relative weight the court gave to particular factors. The district court was free to weigh the § 3553(a) factors as it saw fit when considering them. The weight to be assigned to any one factor falls squarely within the district court's broad sentencing discretion. *See Rosales-Bruno*, 789 F.3d at 1254; *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016) (affirming a sentence as substantively reasonable and rejecting an argument similar to Olson's, noting that "[t]he weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court").

The district court considered the § 3553(a) factors — explicitly discussing the seriousness of the offense and the need for deterrence, incapacitation, and just punishment as factors meriting an upward deviation from the guidelines. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C). It also highlighted other specific details about Olson's crime that took his "case outside the heartland of regular arson guidelines": the more than $7 million in property damage; the risk to human life presented by setting fire to four separate Walmart stores during business hours; and the political motivation behind the fires. *See Kimbrough v. United States*, 552 U.S. 85, 109 (2007) ("[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'") (citation omitted).

The district court supported its significant upward variation "with significant justifications." *See Rosales-Bruno*, 789 F.3d at 1256. Not only that but Olson's sentence of 180 months is well below the statutory maximum of 240 months, *see* 18 U.S.C. § 844(i), (n), which is another indicator of its reasonableness, *see Thomas*, 108 F.4th at 1357; *Croteau*, 819 F.3d at 1310. Olson's sentence was "in the ballpark of permissible" outcomes, making it substantively reasonable as a variance. *See Irey*, 612 F.3d at 1189 (quotation marks and citation omitted). If viewed as a variance, the sentence stands.

### 2. Substantive Reasonableness — Departure

Analyzing Olson's sentence as a departure does not do him any good for two reasons. First, he does not even attempt to argue that his sentence is substantively unreasonable if considered as a departure. So, he has failed to carry his burden of convincing us that the court abused its discretion in granting an upward departure.

Second, even if he tried, Olson couldn't show that his sentence is substantively unreasonable as a departure. In its Statement of Reasons for the departure, the district court checked two boxes stating: (1) "5K2.0 Aggravating/Mitigating Circumstances"; and (2) "5K2.5 Property Damage or Loss." Both of the departure provisions that the court cited undoubtedly apply to the factual circumstances of this crime. *See* U.S.S.G. §§ 5K2.0(a)(3) (aggravating circumstances), 5K2.5 (property loss).

One of those provisions authorizes a district court to depart upward where the offense caused property damage or loss to

property that was not adequately considered by the guidelines. U.S.S.G. § 5K2.5.  At the sentence hearing, the court found there had been more than $7 million in property damage and loss to Walmart.

The other provision that the district court relied on to authorize its departure applies where an aggravating or mitigating "circumstance is present . . . to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense." *See* 5K2.0(a)(3).  Consistent with that departure provision, the Court found that the risk to human life presented by setting fire to four separate Walmart stores and the property in them was not adequately considered by the guidelines.  Nor, it reasoned, was the political motivation behind the fires a circumstance adequately taken into consideration by the guidelines.

Then in the part of the form calling on the court to "State the basis for the departure," the Court elaborated:

> The Court finds that the advisory guideline range is not reasonable, based on the facts and circumstances of the case.  The Court grants an upward departure based on the inadequacy of the guidelines to reflect for four separate fires, as part of the instant federal offense.  The sentence imposed addresses the seriousness of the offense and meets the sentencing objectives of deterrence, incapacitation, and punishment.

Based on the departure provisions cited by the court and the extraordinary circumstances surrounding Olson's crime, the

sentence was not an abuse of discretion or substantively unreasonable.  If viewed as an upward departure, the sentence stands.

## IV.  CONCLUSION

Under the circumstances of this case, it makes no difference whether the district court's upward deviation from Olson's 60-month guidelines sentence (the mandatory minimum) to 180 months is classified as a variance or an upward departure.  The court stated that it would impose the same sentence "whether an upward departure or a variance," and Olson's sentence is substantively reasonable under either framework.  There was no abuse of discretion.  *See Keene*, 470 F.3d at 1349; *Goldman*, 953 F.3d at 1221; *Livesay*, 525 F.3d at 1092.

**AFFIRMED.**