**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-12025

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

GUMERSINDO GONZALEZ-MONTOYA,
   a.k.a. Gumersindo Montoya,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:24-cr-00084-TPB-PRL-1

_____

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Gumersindo Gonzalez-Montoya appeals his 20-month upward variance sentence for unlawfully reentering the United States

after being deported, 8 U.S.C. § 1326(a).  On appeal, he argues that his sentence is substantively unreasonable.  After careful review, we conclude that the district court did not abuse its discretion or impose an unreasonable sentence, so we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In July 2024, Gonzalez-Montoya was charged, by indictment, with illegal reentry into the United States after previously having been deported, 8 U.S.C. § 1326(a).  Gonzalez-Montoya pled guilty without a plea agreement.  Before sentencing, a probation officer prepared a presentence investigation report ("PSI"), which described Gonzalez-Montoya's offense conduct as follows.

Gonzalez-Montoya is a citizen and national of Mexico.  In January 2018, Immigration and Customs Enforcement ("ICE") officials encountered him in Dallas, Texas, and processed him "as a voluntary removal."  ICE officials again encountered him in March 2018, however, and deported him to Mexico in May 2024.  Subsequently, Gonzalez-Montoya was found voluntarily back in the United States.  In July 2024, Gonzalez-Montoya was a passenger in his girlfriend's vehicle.  His girlfriend parked her car behind a Florida Highway Patrol Vehicle and sought assistance from the officer in the vehicle.  She stated that Gonzalez-Montoya was intoxicated, the two had argued, and Gonzalez-Montoya had hit her.  Gonzalez-Montoya was arrested for domestic battery and booked into jail in Marion County, Florida.

ICE obtained Gonzalez-Montoya's fingerprints after he was booked into jail and submitted them to the Homeland Security Investigations Forensic Laboratory. Agents determined the fingerprints matched Gonzalez-Montoya's immigration file and showed that he had been previously removed from the United States. In addition, neither the Attorney General of the United States nor the Secretary of the Department of Homeland Security had given consent for Gonzalez-Montoya to reapply for admission.[1]

The probation officer calculated a guidelines range for Gonzalez-Montoya using the 2024 edition of the Sentencing Guidelines Manual. First, it assigned Gonzalez-Montoya an offense level of eight, under U.S.S.G. § 2L1.2(a). Then, it applied a two-level reduction because Gonzalez-Montoya had "clearly demonstrated acceptance of responsibility for the offense." *See* U.S.S.G. § 3E1.1(a). The probation officer then calculated Gonzalez-Montoya's criminal history score to be seven, leading to a criminal history category of IV. *See* U.S.S.G. Ch. 5 Pt. A. The probation officer calculated this criminal history score based on several prior convictions, including: (1) driving while intoxicated in January 2018; (2) driving without a valid license on March 3, 2024; (3) driving under the influence and driving without a valid license on March 17, 2024; (4) battery domestic violence in July 2024, leading to the arrest in

---

[1] Neither the PSI nor any other portion of the record contains any detailed information about Gonzalez-Montoya's entries to the United States; all the record shows is that his entries were unauthorized.

this case; and (5) violations of the terms of his pretrial release in August 2024 as related to the battery domestic violence charge.

The PSI provided additional details about the battery domestic violence conviction. Specifically, Gonzalez-Montoya's girlfriend told the officer that she picked Gonzalez-Montoya up from his brother's residence to go to the store and visit a friend. Yet Gonzalez-Montoya "was heavily intoxicated," the two began arguing, and Gonzalez-Montoya began looking through her phone. During the argument, Gonzalez-Montoya grabbed her arm, as she was driving, and began hitting her in the chest with a closed fist. He also grabbed her by the back of her neck. Gonzalez-Montoya's girlfriend tried to honk the horn of the car to alert law enforcement, but Gonzalez-Montoya "grabbed the steering wheel and attempted to direct the vehicle off the roadway." Law enforcement observed red marks on the victim, consistent with her description of the events. In addition, Gonzalez-Montoya was convicted for violating the terms of his release by contacting his girlfriend, the victim, from the Marion County Jail using the phones of other inmates. His girlfriend received at least four phone calls from the jail.

The PSI also noted that the statutory maximum term of imprisonment for Gonzalez-Montoya's conviction was two years and, based on an offense level of 6 and a criminal history category of IV, calculated Gonzalez-Montoya's guidelines range to be 6 to 12 months. Neither Gonzalez-Montoya nor the government objected to the PSI.

At sentencing, the parties agreed that the facts and guidelines calculations in the PSI were correct, so the district court adopted them without change.  In doing so, the court noted that Gonzalez-Montoya had "a total offense level [of] 6," and a "criminal history category [of] IV, which means he has a record . . . ."  The court also ensured Gonzalez-Montoya had reviewed the PSI and had no questions about it.  The court then asked the parties for their recommended sentences.

The government recommended a 12-month sentence, at the high end of the guidelines range.  It explained that Gonzalez-Montoya had been removed from the United States in May 2024, and he was found back in the United States "only two months later" in July 2024.  It also noted Gonzalez-Montoya was found in the country because he committed battery against his girlfriend while she was driving.  Gonzalez-Montoya argued, on the other hand, that the court should consider sentencing him to time served.  He argued that he had grown up in relative poverty and only had one prior removal from the United States.  He also contended that his employment records showed that he was hard-working and asserted that his record showed he had "an alcohol issue" which had led to his criminal history.  He also emphasized that many of his prior offenses were misdemeanor offenses related to alcohol.  Finally, he noted that he would be removed to Mexico after serving his sentence and he had already served four months and five days awaiting sentencing.

After Gonzalez-Montoya declined to allocute, the district court announced its sentence. It first noted that it would impose one year of supervised release after Gonzalez-Montoya's release from incarceration and that he would have to comply with the standard conditions of supervision for the Middle District of Florida, as well as two special conditions. Specifically, Gonzalez-Montoya could not come back into the country without the appropriate permission and, if he was back in the country, he was "not to have any alcohol whatsoever, not even one beer." The court then highlighted the facts of the case, as reported in the PSI.

It noted that Gonzalez-Montoya had been "kicked . . . out" of the country and then had returned "barely two months later." Moreover, he then committed violence against his girlfriend "two months after getting deported last time." The court also stated that Gonzalez-Montoya had several prior convictions for alcohol-related crimes and that he was "not getting the message." It explained:

> Alcohol is a problem. It's ruining his life, it's ruining his girlfriend['s] . . . life, and it's putting him in jail again. If he had just stayed sober, he probably could have stayed in this country and not got caught, but he's got a problem. I've got to get his attention here. These guidelines are insufficient. He's showing disrespect for the law. So to promote respect for the law and punish and deter people from doing this, he's getting two years.

Gonzalez-Montoya objected, noting that the district court's statutory maximum sentence failed to account for his acceptance of responsibility. The district court agreed with the objection, noting that it was important to reward defendants who plead guilty rather than go to trial.

Accordingly, the court sentenced Gonzalez-Montoya to 20 months' imprisonment, rather than the statutory maximum 24 months. Gonzalez-Montoya objected to the procedural and substantive reasonableness of the sentence. After the district court entered judgment consistent with its statements at sentencing, Gonzalez-Montoya appealed.

## II. STANDARD OF REVIEW

We follow a "two-step process" when reviewing a sentence. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we review the sentence for procedural reasonableness, determining "whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range . . . , failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 936.[2]

In the second step of our "two-step process," we determine "whether the sentence is substantively reasonable in light of the

---

[2] That said, Gonzalez-Montoya does not raise any procedural reasonableness challenges on appeal, so we turn to the second step of our analysis without further discussion of this first step.

totality of the circumstances and the § 3553(a) factors." *Id.* at 935–36. "We review the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022). "In reviewing the [substantive] reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (Opinion of E. Carnes, J.)). A party arguing a sentence is unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). "[W]e have identified three ways in which a district court can abuse its discretion" and "impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

## III. DISCUSSION

On appeal, Gonzalez-Montoya argues the district court abused its discretion by: (1) failing to give sufficient weight to the guidelines; and (2) weighing relevant factors unreasonably. As to the first point, he contends that the district court "never mentioned the guideline range or the extent of [its] variance" from that range.

He asserts that, rather than using the guidelines range as the benchmark, the court treated the statutory maximum of two years as the benchmark.  In his second argument, Gonzalez-Montoya contends the district court overlooked important mitigating facts, "such as his sustained work history, lack of prior felony convictions, and limited immigration background."  Instead, the court focused extensively on the facts surrounding the offense and his alcohol-related misdemeanor offenses.  He argues that, in doing so, the court over-emphasized facts that were already considered in the Guidelines, so a guidelines sentence would have been appropriate.  While he concedes the court "had discretion to vary upward," he argues that it failed to justify its variance.  For these reasons, he contends that the district court committed a clear error of judgment in imposing the sentence, and he urges us to vacate for resentencing.

Under § 3553(a), a district court must impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from future crimes of the defendant.  18 U.S.C. § 3553(a).  In addition, the court must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  *Id.*

In assessing the reasonableness of a sentence, we "ordinarily expect a sentence within the Guidelines range to be reasonable." *Gonzalez*, 550 F.3d at 1324; *see also United States v. Castaneda*, 997

F.3d 1318, 1332 (11th Cir. 2021).  We do not assume that a sentence outside the Guidelines range is reasonable, nor do we assume it is unreasonable.  *Butler*, 39 F.4th at 1355.  That said, we have found sentences substantively unreasonable where the district court failed to give adequate consideration of the guidelines range.  *See, e.g.*, *United States v. Hayes*, 762 F.3d 1300, 1307–11 (11th Cir. 2014); *United States v. Pugh*, 515 F.3d 1179, 1200–01, 1203 (11th Cir. 2008).  All the same, while the district court must consider the guidelines and all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach greater weight to one factor over the others.  *Butler*, 39 F.4th at 1355; *see Rosales-Bruno*, 789 F.3d at 1254 ("'We have not attempted to specify any particular weight that should be given to the guidelines range,' and we have rejected 'any across-the-board prescription regarding the appropriate deference to give the Guidelines.'" (first quoting *Irey*, 612 F.3d at 1217; and then quoting *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006))); *see also United States v. Olson*, 127 F.4th 1266, 1276 (11th Cir. 2025) ("A district court does not have to give all the factors equal weight . . . .").

In imposing an upward variance, we have explained that a court should look to the § 3553(a) factors.  *Butler*, 39 F.4th at 1355.  For instance, it can "impose an upward variance if it concludes that the Guidelines range was insufficient in light of a defendant's criminal history," or if it concludes that uncharged conduct relates to "the need to promote respect for the law, afford adequate deterrence, and promote the public."  *Id.*

Typically, a court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). Instead, a "court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments" is typically sufficient to show it has considered the issues and arguments before it. *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)).

We conclude Gonzalez-Montoya has not borne his burden to show his sentence is substantively unreasonable. *Gonzalez*, 550 F.3d at 1324. First, we disagree with Gonzalez-Montoya's first argument because the district court did not disregard the guidelines range; instead, it explicitly noted and considered that range and concluded it was "insufficient" given the facts in the record, which the court identified and read into the record. This case therefore bears little resemblance to the cases which Gonzalez-Montoya cites as showing that the district court failed to consider the guidelines range.[3] The district court clearly explained its rationale for varying

[3] In *United States v. Cortero-Roman*, for instance, we remanded "because the district court did not sufficiently explain the basis for the extreme degree of variance" it chose. No. 22-13930, 2025 WL 1662612, at *10-12 (11th Cir. Jun. 12, 2025) (unpublished). The variance in *Cortero-Roman* was a "166-month, or 1,186%, upward variance" from the applicable guidelines range. 2025 WL 1662612, at *11. We find this case particularly distinguishable because Gonzalez-Montoya received a significantly shorter sentence and much less of a variance. Moreover, as explained, the district court here gave a clear and cogent reason for the degree of the variance, which was lacking in *Cortero-Roman*.

from the guidelines: it saw the guidelines as insufficient to address the serious violence and misconduct Gonzalez-Montoya had committed shortly after being removed from the United States. While the guidelines reflected Gonzalez-Montoya's prior convictions, they did not capture the fact that he committed this crime mere months after his prior removal, which was highly relevant to the district court's conclusion that a variance was necessary "to promote respect for the law, afford adequate deterrence, and protect the public." *Butler*, 39 F.4th at 1355.

Therefore, Gonzalez-Montoya's argument on the guidelines amounts to an argument that the district court should have given the guidelines more weight. Yet, the district court has broad discretion to give more weight to certain relevant factors over others; it does not have to weigh each factor the same. *See Butler*, 39 F.4th at 1355; *Rosales-Bruno*, 789 F.3d at 1254; *Olson*, 127 F.4th at 1276. Accordingly, the district court did not "fail[] to properly consider a relevant sentencing factor that was due significant weight . . . ." *Butler*, 39 F.4th at 1356; *see also Irey*, 612 F.3d at 1189.

Second, the district court did not commit a clear error of judgment in weighing the relevant factors. The court relied heavily on Gonzalez-Montoya's criminal history and alcohol abuse, as well as the fact that he battered his girlfriend, leading to his arrest. It also noted that Gonzalez-Montoya had recently been deported and removed from the United States immediately before his arrest in this case. The court reasonably concluded that an upward variance sentence would "promote respect for the law and punish and

deter people from" engaging in similar conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(B). The court added that it had considered Gonzalez-Montoya's acceptance of responsibility and lowered his sentence from the statutory maximum in light of that fact. While the district court did not discuss, at length, Gonzalez-Montoya's other mitigating arguments, it was not required to do so. *See Amedeo*, 487 F.3d at 833; *Butler*, 39 F.4th at 1355; *Sarras*, 575 F.3d at 1219.

The abuse of discretion standard is deferential, as it "allows for a 'range of choice for the district court,' as long as that choice is not a 'clear error of judgment.'" *United States v. Beaufils*, 160 F.4th 1147, 1163 (11th Cir. 2025) (quoting *Rasbury v. IRS* (*In re Rasbury*), 24 F.3d 159, 168 (11th Cir. 1994)). Based on the totality of circumstances, Gonzalez-Montoya has not shown that his sentence falls outside "the ballpark of permissible outcomes" or that the court so abused its discretion. *Butler*, 39 F.4th at 1355. Therefore, we reject his substantive reasonableness challenge.

## IV. CONCLUSION

For the reasons we have provided, we affirm Gonzalez-Montoya's sentence.

**AFFIRMED.**