**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 25-12544
Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

MALIK JAVIER MCKENZIE,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:24-cr-00047-RSB-CLR-1

————————————————

————————————————

No. 25-12550
Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

2                    Opinion of the Court                    25-12544

*versus*

MALIK JAVIER MCKENZIE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:25-cr-00065-RSB-CLR-1

_____

Before LUCK, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Malik McKenzie appeals his convictions and 595-month sentence for one count of possession with intent to distribute fentanyl, cocaine, carfentanil, and methamphetamine; one count of possession of a machinegun in furtherance of a drug trafficking crime; and one count of possession of a firearm by a convicted felon. The convictions arose out of a traffic stop, after Officer Josh Myers of the Hinesville Police Department ("HPD") witnessed a Ford Fiesta run a stop sign. When Officer Myers attempted to pull the car over, it drove away and eventually crashed, and two men fled from the car on foot. Officer Myers gave chase and caught up to one of the men, Malik McKenzie; McKenzie struggled with the officer, trying to reach his gun belt; McKenzie was apprehended; and drugs and a loaded Glock 9-mm pistol were found on McKenzie's person.

Later, during his jury trial on the drug and firearm charges, McKenzie passed a note to a guard attempting to bribe a juror. He pled guilty to one count of obstructing justice by endeavoring to

influence a juror and proceeded to a combined sentencing hearing on his trial convictions and his jury tampering conviction.  His appeals from these related cases are consolidated here.

On appeal, McKenzie argues that: (1) the district court erred in denying his motion to suppress because the officer who stopped his car lacked reasonable suspicion necessary to justify a traffic stop; (2) the court abused its discretion in admitting evidence of McKenzie's past drug sales under Federal Rule of Evidence 404(b); (3) the court erred in denying his motion for judgment of acquittal based on insufficiency of the evidence; and (4) his sentence was procedurally unreasonable because the district court clearly erred in imposing guideline enhancements under both U.S.S.G. § 3A1.2(c)(1) (Official Victim) and § 3C1.2 (Reckless Endangerment During Flight). After thorough review, we affirm.

## I.

When reviewing a district court's denial of a motion to suppress, we review findings of fact for clear error and the application of the law to the facts de novo.  *United States v. Wilson*, 979 F.3d 889, 908 n.9 (11th Cir. 2020).  In doing so, we view the evidence in the light most favorable to the prevailing party and consider the entire record.  *Id.*  We review the admission of evidence under Rule 404(b) for abuse of discretion.  *United States v. Booker*, 136 F.4th 1005, 1013 (11th Cir. 2025).  We review de novo a district court's denial of a motion for judgment of acquittal on sufficiency of evidence grounds, viewing the evidence in the light most favorable to

the prosecution and drawing all reasonable inferences and credibility choices in its favor. *United States v. Fleury*, 20 F.4th 1353, 1367 (11th Cir. 2021). We will uphold the denial of a motion for judgment of acquittal and affirm the jury's guilty verdict "if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citation modified).

We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (citation modified). This standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (quoting *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc)).

## II.

First, we are unpersuaded by McKenzie's claim that the district court erred in denying his motion to suppress. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment." *Wilson*, 979 F.3d at 908. To be reasonable, and thus compliant with the Fourth Amendment, "a traffic stop must be supported by an officer's reasonable suspicion, that is a particularized and objective basis for suspecting the person stopped of criminal activity." *Id.* (citation modified). This criminal activity includes minor traffic violations. *Id.*

"Where the district court has made a determination as to a witness's credibility, we afford that determination substantial deference." *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015). "We will accept a factfinder's credibility determination unless the proffered evidence is contrary to the laws of nature or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (citation modified). And "[t]he fact that a witness is of dubious character does not, by itself, render his testimony incredible." *Id.*

Here, the district court did not err in denying McKenzie's motion to suppress. McKenzie argues that the officer who stopped his car, HPD Officer Myers was so unbelievable that Myers's uncontroverted testimony -- that he witnessed the Ford Fiesta in which McKenzie was travelling run a stop sign -- could not establish reasonable suspicion of a traffic violation. This argument fails.

As the record reveals, the magistrate judge who presided over McKenzie's suppression hearing explicitly made a finding as to Myers's credibility, finding him to be "wholly credible." The magistrate judge noted that Myers described the events of March 6, 2024 "in detail" from the initial stop sign violation though the crash and apprehension of McKenzie. He found that Myers "straightforwardly and consistently testified" as to the events in question. And Myers's testimony -- that he saw the white Ford Fiesta in which McKenzie was travelling fail to stop at a stop sign -- was not "contrary to the laws of nature or so inconsistent or improbable on its face that no reasonable factfinder could accept it."

*Id.* (citation modified).  McKenzie's attacks on Officer Myers's credibility do not overcome the magistrate judge's credibility finding, which we owe "substantial deference."  *Id*.  And because Myers personally observed the Fiesta commit a traffic violation by failing to stop at the stop sign, he had reasonable suspicion for the stop. *Wilson*, 979 F.3d at 908.  We affirm the district court's decision to deny McKenzie's motion to suppress.

## III.

We also are unconvinced by McKenzie's claim that the district court abused its discretion in admitting evidence of his past drug sales under Rule 404(b).  Under Rule 404(b)(1), evidence of "other crime[s], wrong[s], or act[s]" may not be admitted "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  However, this evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "Because Rule 404(b) is a rule of inclusion, Rule 404(b) evidence should not be lightly excluded when it is central to the prosecution's case."  *Booker*, 136 F.4th at 1013 (citation modified).

Under our "three-part test, evidence of other acts is admissible if: (1) the evidence is relevant to an issue other than the defendant's character; (2) there is sufficient proof to allow a jury to find by a preponderance of the evidence that the defendant committed the prior act; and (3) the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice under Rule

403." *Id.* at 1013–14. As for the first prong, a drug trafficking defendant, by pleading not guilty, "place[s] his intent at issue and put[s] the government to its burden to prove the intent-to-distribute element beyond a reasonable doubt." *Id.* at 1014. As for the second prong, "a conviction based on a guilty plea to the prior [drug distribution] crime is sufficient proof for the jury to find by a preponderance of the evidence that [the defendant] possessed [the drugs] with intent to distribute" during those prior instances. *Id.* And, finally, we "repeatedly ha[ve] held that evidence of prior drug dealing is highly probative of intent to distribute a controlled substance and that such evidence is not overly prejudicial." *Id.* This is especially true when evidence of the defendant's prior drug sales is accompanied by a limiting instruction informing the jury of the proper and improper uses of the evidence. *See id.* at 1011–12, 1014.

Here, the district court did not abuse its discretion in admitting evidence of McKenzie's past drug sales through a redacted plea agreement. That evidence was relevant for the non-propensity purpose of showing that McKenzie intended to distribute the drugs with which he was found in this case. And the signed plea agreement wherein McKenzie admitted to the conduct in question was sufficient to prove that he sold the drugs by a preponderance of the evidence. In fact, McKenzie does not address the first two prongs for admissibility under Rule 404(b): (1) he does not claim that the evidence was not relevant to his intent to distribute the drugs; nor (2) does he claim that the plea agreement was not sufficient to prove that he sold the drugs on those occasions by a preponderance of the evidence. *Id.* at 1013–14.

However, McKenzie argues, as for the third prong, that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice under Rule 403. *Id*. at 1014. But we've "repeatedly [] held that evidence of prior drug dealing is highly probative of intent to distribute a controlled substance and that such evidence is not overly prejudicial." *Id*. Like the defendant in *Booker*, McKenzie placed his intent at issue by pleading not guilty to Count One of his indictment, which required the government to prove he possessed the drugs with the intent to distribute them. 21 U.S.C. § 841(a)(1). And like in *Booker*, the district court gave the jury a limiting instruction, telling it to only consider the evidence of McKenzie's prior drug sales as evidence of his intent and not to establish his propensity for similar conduct. Thus, all three prongs for admission of the Rule 404(b) evidence were satisfied, and the district court did not abuse its discretion in admitting McKenzie's redacted plea agreement.

## IV.

Similarly, we find no merit to McKenzie's claim that the district court erred in denying his motion for judgment of acquittal. Determinations as to a witness's credibility "are the exclusive province of the jury, and on sufficiency review we must assume that they were answered in a manner that supports the verdict . . . unless [the] witness['s] testimony [was] 'unbelievable' as a matter of law." *United States v. Gregory*, 128 F.4th 1228, 1247 (11th Cir. 2025) (citation modified). Since credibility determinations are the exclusive province of the jury, "the court of appeals may not revisit [a

witness's credibility] unless [his testimony] is incredible as a matter of law." *Id.* at 1249 (citation modified).

Under 21 U.S.C. § 841(a)(1), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Thus, as we've noted, to convict a defendant under § 841(a) for possession with intent to distribute, the government must prove: (1) knowledge; (2) possession; and (3) intent to distribute. *United States v. Cremades*, 160 F.4th 1296, 1302 (11th Cir. 2025). The government can prove each element with circumstantial evidence, and the possession element may be established through actual or constructive possession. *Id.* "Constructive possession exists when a defendant has dominion or control over the premises in which the object is kept." *Id.* (citation modified). And the "[i]ntent to distribute" element "may be inferred from the amount of the drug involved." *Id.* (citation modified).

To convict a defendant under 18 U.S.C. § 924(c)(1)(A), the government must prove that the defendant: (1) knowingly (2) possessed a firearm (3) during and in relation to a drug trafficking crime. *Gregory*, 128 F.4th at 1248. To possess a firearm "in relation to" a drug trafficking crime, the firearm "must merely facilitate, or have the potential of facilitating, the drug trafficking offense." *Id.* To determine if the firearm in question had this potential, the court considers "the proximity of the firearm to the drugs or drug profits and the time and circumstances under which the firearm is found." *Id.* (citation modified). Finally, to convict a defendant under 18

U.S.C. § 922(g)(1), the government must prove that the defendant knowingly possessed a firearm and "that he knew he was a felon when he possessed the firearm." *Greer v. United States*, 593 U.S. 503, 505–06 (2021) (citation modified).

Here, McKenzie's sufficiency-of-the-evidence argument fails as to each of his challenged convictions. McKenzie primarily argues that all of his convictions rested upon the testimony of Officer Myers, who he again claims was so unreliable that his convictions cannot stand. However, as we've noted, we must accept a jury's credibility determination "unless [the] witness['s] testimony [was] unbelievable as a matter of law." *Gregory*, 128 F.4th at 1247 (citation modified). None of McKenzie's arguments satisfies this standard. The fact that Myers's camera did not capture his chase of McKenzie or the fact that Myers had been disciplined as a police officer in the past are insufficient. McKenzie also claims that Myers was incredible since he misidentified McKenzie as the driver of the Fiesta, but McKenzie's argument -- that another man's phone was found on the driver's seat of the Fiesta after a high-speed chase and crash -- does not establish that McKenzie was not the driver.

McKenzie does not otherwise cite the elements of his convictions nor explain how they were not satisfied. Moreover, McKenzie's convictions did not solely rest on Myers's testimony. At trial, HPD Officer Cody Harman testified that he responded to the traffic stop that day after Officer Myers reported he was engaged in an altercation with a fleeing suspect. After Officer Harman arrived and helped put McKenzie in a patrol car, Harman then

personally searched McKenzie's person, where he found a fanny pack with drugs inside. In addition, HPD Officer William Artman testified that he personally pulled the Glock pistol out of McKenzie's pocket. And DEA Special Agent Jason Peters testified that all the evidence seized from McKenzie, including the weight of the drugs and his possession of digital scales, was consistent with the intent to distribute, and that drug distributors often carry firearms for protection. Finally, McKenzie himself stipulated that on the day in question, he knew he was a felon. All in all, the government presented sufficient evidence to allow the jury to find McKenzie guilty of each charge beyond a reasonable doubt.

## V.

Finally, we reject McKenzie's claim that his sentence was procedurally unreasonable. In reviewing for procedural reasonableness, we "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" *Pugh*, 515 F.3d at 1190 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).[1] "A district court does not

---

[1] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the

have to give all the factors equal weight, and it has discretion to attach great weight to one factor over others." *United States v. Olson*, 127 F.4th 1266, 1276 (11th Cir. 2025) (citation modified).

A district court need not state on the record that it explicitly considered each § 3553(a) factor, nor discuss those factors. *United States v. Oudomsine*, 57 F.4th 1262, 1265 (11th Cir. 2023). Rather, it is enough if the record reflects that the court considered the § 3553(a) factors and the parties' arguments. *Id.* "A district court's failure to discuss mitigating evidence does not indicate that the court erroneously ignored or failed to consider the evidence." *United States v. Butler*, 39 F.4th 1349, 1356 (11th Cir. 2022) (citation modified).

We held in *United States v. Keene* that we will not rule on the validity of a disputed guideline adjustment if (1) the district court stated it would have given the same sentence regardless of the outcome of the disputed guideline provision; and (2) assuming that there was an error, the sentence is still reasonable. 470 F.3d 1347, 1349 (11th Cir. 2006). We have described this concept in later decisions as "a species of the harmless error doctrine." *Olson*, 127 F.4th at 1275 ("If the asserted error did not matter to the result in the district court, whether there was error doesn't matter in the

___

public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

appeal."). To reiterate, we generally will not vacate a defendant's sentence where "(1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *Id.* (citation modified). At the second part of the analysis, we must decide whether the defendant's sentence is still substantively reasonable if the guideline dispute "ha[d] been decided in the way the defendant argued and the advisory range reduced accordingly." *Keene*, 470 F.3d at 1349.

Here, McKenzie argues that his sentence is procedurally unreasonable because the district court clearly erred in imposing the six-level guideline enhancement in U.S.S.G. § 3A1.2(c)(1) (Official Victim) and the two-level enhancement in § 3C1.2 (Reckless Endangerment During Flight). However, as the record reveals, the district court expressly said that it would have imposed the same 595-month sentence regardless of the outcome of the disputed guideline enhancements in § 3A1.2(c)(1) and § 3C1.2. As a result, we will not vacate and remand for resentencing so long as McKenzie's sentence would be substantively reasonable if the contested enhancements had been decided in the way McKenzie argued and the advisory range reduced accordingly. *Id.*

To perform this analysis, we must determine what McKenzie's guideline range would be without the contested enhancements. At sentencing, the district court adopted the presentence investigation report's total offense level of 34, which would have been reduced to 26 without the disputed enhancements in U.S.S.G. § 3A1.2(c)(1) and § 3C1.2. With a criminal history category of V, a

total offense level of 26 would have yielded a guideline range of 110–137 months, which would have been increased to 470–497 months due to the mandatory 30-year concurrent sentence under Count Two.  U.S.S.G. § 5A; 18 U.S.C. § 924(c)(1)(B)(ii).  Thus, we next must decide whether McKenzie's 595-month sentence would be substantively reasonable where the guideline range was 470–497 months.  *See Olson*, 127 F.4th at 1275.

We conclude that his 595-month sentence is reasonable under the *Keene* analysis.  To begin with, the district court relied heavily on several of the § 3553(a) factors, including the seriousness of McKenzie's offenses, in justifying the 595-month sentence.  Among other things, it noted that the drugs McKenzie possessed -- especially fentanyl and carfentanil -- were "extremely dangerous substances" that could have killed the law enforcement officers by merely touching their skin.  The court described how McKenzie engaged in all of this conduct while carrying a loaded machinegun that could shoot over 20 bullets in "the blink of an eye."  It commented on the "alarming" nature of the circumstances of McKenzie's flight from the officers, including how he evaded the police, fought an officer, and was armed with a machinegun.  The district court also focused on the need to promote respect for the law, noting how McKenzie failed to accept responsibility for his charges and even tried to bribe a juror to acquit him.  The court found this to be an attempt to corrupt the system of justice.

In addition, the district court placed significant weight on McKenzie's lengthy and violent criminal history, finding that even

after several chances to correct his behavior, McKenzie chose to engage in this type of conduct "again and again." It added that the sentence it imposed was necessary "to protect the public from [McKenzie's] crimes." The district court was permitted to attach more weight to these sentencing factors over others; it did not abuse its considerable discretion in doing so. Thus, the record reveals that in selecting the 595-month sentence, the district court sufficiently considered the § 3553(a) factors and the parties' arguments and more than adequately explained its chosen sentence.

In short, McKenzie's 595-month sentence, although it would constitute an upward variance, does not "'lie[] outside the range of reasonable sentences dictated by the facts of th[is] case.'" *Riley*, 995 F.3d at 1278 (quoting *Irey*, 612 F.3d at 1190). And because McKenzie's 595-month sentence is substantively reasonable even without the application of the disputed guideline enhancements, we affirm. *Keene*, 470 F.3d at 1349.

**AFFIRMED.**