**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-12232

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

TERRY S. CARRINGTON,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:24-cr-00030-MW-MAF-1

————————————

Before BRANCH, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

Terry S. Carrington appeals his 84-month sentence for assault with a dangerous weapon with intent to do bodily harm, under 18 U.S.C. § 113(a)(3), and assault resulting in serious bodily

harm, under 18 U.S.C. § 113(a)(6).  On appeal, Carrington argues that his sentence is substantively unreasonable.  After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In July 2024, Carrington was charged in a two count indictment with: (i) assault with a dangerous weapon, with intent to do bodily harm, within the special maritime and territorial jurisdiction of the United States, under 18 U.S.C. § 113(a)(3) ("Count One"), and (ii) assault resulting in serious bodily injury within the special maritime and territorial jurisdiction of the United States, under 18 U.S.C. § 113(a)(6) ("Count Two").  At his initial appearance, Carrington was granted conditional pretrial release.  Subsequently, Carrington pled guilty to both counts.

As part of the plea agreement, Carrington and the government agreed to the following facts regarding Carrington's offenses.  On April 24, 2024, Carrington captained a commercial fishing vehicle for a multi-day fishing trip in the Gulf of Mexico.  He was accompanied by two deckhands, C.W. and S.S.  Shortly before noon, C.W. woke up from a nap and proceeded to the back of the boat to begin fishing.  After he began fishing, "he heard a loud 'whack' sound."  C.W. looked back and saw S.S. lying unconscious on the floor of the boat.  Carrington was standing over S.S., trying to pick him up by the shirt and—in C.W.'s opinion—throw S.S. overboard.  C.W. asked Carrington what he was doing and Carrington

responded, "I'ma kill you, how you want it."  Carrington then retrieved a Remington bolt action rifle from the boat's cabin, prepared the rifle to fire and pointed it at C.W.

Carrington set the rifle down for a moment, but then grabbed the rifle for a second time and turned toward C.W.  C.W. grabbed the stock and barrel of the rifle and the two men struggled for control of it.  During the struggle, Carrington fired the rifle three or four times, ejecting the spent shell casing each time and reloading another shot.  As they struggled, Carrington repeated, "I'ma f**king kill you."  At another point, Carrington pointed the rifle in the direction of C.W.'s head and pulled the trigger.  However, the bullet missed C.W. and went through the roof of the ship's cabin.  Carrington continued to fire the rifle until it ran out of ammunition.  Once C.W. realized the rifle was out of ammunition, he took his hand off the barrel and hit Carrington in the face, knocking him down.  The two men continued to struggle, and C.W. sustained bruises and cuts to his arm and an injury to the back of his head.  C.W. began saying the names of Carrington's children and praying with him, calming him down.  C.W. then disassembled the rifle and gave it to S.S.—who had regained consciousness—to hide.  S.S. then drove the boat back to Apalachicola, Florida.  Once back on land, C.W. told S.S. that Carrington had assaulted S.S. and knocked him unconscious.  S.S. drove to the hospital, where he was diagnosed with a fractured jaw and a possible concussion.

S.S. was later interviewed by the Coast Guard.  In that interview, S.S. stated that, after regaining consciousness, he knew he

had been struck in the jaw because of vision issues and severe pain. He reported that he had been prescribed narcotics in the aftermath of the incident, suffered from double vision in one eye, and could not eat solid food because of his jaw injuries. In another interview, months later, S.S. reported similar injuries and explained that he would need braces to correct his bite and eat like he had been able to previously. As part of his agreement with the government, Carrington also conceded that the incident took place within the special maritime and territorial jurisdiction of the United States. Carrington and his attorney signed this factual proffer.

At the change-of-plea hearing, Carrington informed the district court of another relevant fact not in the proffer: he had been under the influence of illegal drugs during the incident, and he could not recall some of the facts to which he agreed. However, he acknowledged that the government could prove these facts. At the end of the change-of-plea hearing, the district court released Carrington on bond pending sentencing. However, the court noted that Carrington had violated the conditions of bond once already and it explained that its "patience [wa]s exhausted."

The next day, Carrington tested positive for methamphetamine. That positive test was followed by another positive test for methamphetamine ten days later. In addition, shortly thereafter, Carrington was charged with fishing violations in Franklin County Florida, which involved off-season fishing and failing to stop when Florida Fish and Wildlife officers attempted to stop his vessel. Car-

rington also failed to notify his probation officer about this interaction with Florida Fish and Wildlife officers. In light of these violations of his release conditions, a magistrate judge ordered Carrington detained pending sentencing.

In advance of sentencing, a probation officer prepared a presentence investigation report ("PSI") which described Carrington's offense conduct largely consistent with the factual proffer. However, it also provided some additional information. Most relevantly, the PSI noted that, after the attack, Carrington had taken steps to conceal or minimize his conduct. Specifically, the PSI noted that Carrington hid the firearm, threw a spent ammunition casing overboard, cleaned/arranged the cabin area, and attempted to conceal a bullet hole in the cabin of the boat with sealant. In addition, Carrington provided false statements suggesting that he had been drugged by the victims when, in fact, he had voluntarily ingested methamphetamine.

At sentencing, the district court ensured that Carrington had reviewed the PSI and the objections and then explained that it had reviewed all the evidence and arguments submitted by the parties. The court then calculated Carrington's advisory guidelines range. In doing so, it noted the PSI's calculations—*i.e.*, that Carrington had an offense level of 23 and a criminal history category of II—and asked whether either party had any objections to those calculations. The government argued that the court should remove Carrington's reductions for acceptance of responsibility, under U.S.S.G. § 3E1.1(b) & (c). After hearing arguments on that issue,

the court agreed with the government in part and disagreed in part and it adjusted Carrington's offense level to 24, which led to guideline range of 57 to 71 months' imprisonment.[1]

Carrington then called the victim C.W. as a witness, who testified that Carrington was "a mentor" of sorts who was "like family" to him, and that Carrington's behavior during the assault was "out of the ordinary." C.W. explained that, during the assault, Carrington was incoherent and appeared to be hallucinating or had overdosed. C.W. also testified that, after the incident, Carrington had told him that he believed he had been drugged by S.S. C.W. recalled that S.S. and Carrington had discussed drug use during the trip but that he had told the men that he did not want to participate. C.W also testified that, on occasion, he had witnessed Carrington using methamphetamine while fishing and he believed that Carrington's methamphetamine use had gotten worse in the lead-up to the incident.

C.W. also testified that, on the day of the incident, he had undergone surgery on his leg, which had been "crushed" in a previous fishing incident. In fact, he was supposed to be resting on the day of the injury, but Carrington told him that he "could come and didn't have to do much" on the trip and would still be paid. During the sentencing hearing, C.W. recounted the incident in detail and explained that his injury to his leg was inflamed by the incident.

---

[1] Neither party challenges the district court's acceptance of responsibility ruling on appeal, so we do not address whether it was correct.

Because of that stress to his leg from the incident, he had to have an additional surgery.

Next, the defense called Mark Taylor, who testified that he and Carrington were "pretty good friends" and had been fishing together many times. He testified that he had never seen Carrington be violent on any of their prior fishing trips. A character witness, Jason Walker, testified similarly. The mother of Carrington's children then testified, explaining that Carrington was a great father and had "come a long way in his addiction problems."

The government called Coast Guard Agent Jose Santiago, who testified about his investigation of the offense. He explained that methamphetamine had been recovered from the boat, confirming that Carrington's post-offense statements that he had been drugged were false. However, Agent Santiago clarified that the presumed methamphetamine had not been submitted to a laboratory for confirmation.

The government also called the victims, who provided victim impact statements. S.S. testified that the incident caused him "bodily harm, mental anguish, and financial distress" and had kept him from working for weeks on end. He also had to deal with "slander and threats" on social media which he believed were due to "untruths told" about him by Carrington. He also expressed that the charges were not as serious as Carrington's actual conduct, which "was attempted murder, essentially." He also reported that Carrington had threatened him and his family.

C.W.'s father also testified, explaining that the incident had deeply impacted C.W. and had limited his and C.W.'s ability to fish together.  He expressed remorse for "introduc[ing] his son to the world of commercial fishing years ago thinking it would be a good job for him" without foreseeing that he would be exposed to such a violent incident.  C.W. also testified that he was "severely impacted" by the incident because he was unable to continue fishing and because Carrington had been, up until the time of the incident, "a great friend" who had "become family" to him.  Finally, Carrington gave an allocution, apologizing for his conduct and expressing regret that his use of drugs and his history with drugs had caused the incident in the first place.

After all of the statements, the district court expressed that it found that C.W.'s testimony was "impressive," credible, and reflected "an incredible amount of grace" to talk about Carrington in a neutral and balanced manner.  It remarked, in fact, that C.W. was "as honest a witness as I've ever had come in this courtroom."  It then asked the parties for their arguments about an appropriate sentence.

Carrington argued that his conduct was aberrational and that his lack of premeditation was a mitigating factor.  He also argued that he did not intend to blame S.S. but that he believed he was drugged given the circumstances.  The court, however, disagreed, concluding that it "strains credulity" to conclude that Carrington was drugged because he "is an admitted drug addict, who was taking drugs and was dealing with drugs, and coming in and

out of trying to address his drug problem, voluntarily taking drugs." The court agreed that it was not premediated, though, and explained that if it "was premediated or there wasn't mitigating facts," it would be giving Carrington the maximum sentence. At bottom, however, the district court concluded that a guideline sentence would not be appropriate because Carrington "knocked one guy out, took his jaw out, and then tried to shoot not once, but" multiple times, which was very aggravating, even in light of the facts that Carrington "is probably a very good father and cares about his family," and "a good provider . . . ."

The government, in response, argued that this case was more severe than the 57-to-71-month Guidelines range represented. It argued that Carrington's conduct—and denial of responsibility—amounted to obstruction and that his obstruction continued through the time he was on release pending sentencing. It reiterated that Carrington continued to use drugs and committed fishing violations after pleading guilty, which were further aggravating factors justifying a variance.

The district court imposed an 84-month sentence, to be followed by three years of supervised release. In explaining its chosen sentence, the court first noted that S.S. and C.W. had testified credibly and had both suffered greatly due to Carrington's actions. It "categorically reject[ed]" any suggestion that Carrington was drugged by the victims and explained that the case was, in its view, "unusual." Specifically, it concluded that Carrington's actions were not "just . . . simple assault," but rather the facts were "incredibly

egregious."   It noted that the Guidelines calculations reflected "some of these facts" but did not "account for" how aggravating the conduct was because the conduct was "demonstrably worse than other cases" the court had seen where a firearm had been discharged.  Similarly, while the Guidelines reflected that the victims (C.W. and S.S.) were injured, C.W.'s injury was very serious, thus "requiring another surgery."  Further, while Carrington received points under the Sentencing Guidelines for obstruction, "not all obstruction is created equal" and "the obstruction [here was] far worse and more egregious than other cases where [a defendant] just do[es] one thing" and receives an enhancement.  In total, the court concluded "the victim impact in this case" was "far more egregious than other assault cases" it had seen and the offense conduct was "far worse than other [similar] cases" it had seen as well.  Therefore, "the guideline range. . . understate[d] the nature of the conduct" so an upward variance was appropriate.  That said, the district court recognized mitigating factors in this case, including Carrington's "serious drug problem" and the fact that this was "aberrational" conduct.

In light of these countervailing concerns, the court concluded an 84-month sentence would "take into account all of the particular egregious facts" of the case and the § 3553(a) factors and, it explained, any shorter sentence "would be insufficient and would understate the damage that was done in this case and the suffering of the victims in this case and would result in disparities in sentencing."  The district court later entered judgment to this effect, and Carrington appealed.

## II. STANDARD OF REVIEW

We follow a "two-step process" when reviewing a sentence. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we review the sentence for procedural reasonableness. *Id.* at 936.[2] Second, we determine "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors." *Id.* at 935–36. "We review the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022). In reviewing for substantive reasonableness, "we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015)). A party arguing a sentence is unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008); *see also United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). "[W]e have identified three ways in which a district court can abuse its discretion" and "impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356;

---

[2] Carrington does not argue the district court made any procedural error.

*see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (same).

### III. DISCUSSION

On appeal, Carrington contends that his sentence is substantively unreasonable, making essentially three arguments. First, he asserts that the district court gave insufficient weight to his mitigation evidence which he says showed that he was a devoted father and that the offense conduct here was an aberration caused by his longstanding issues with drugs. Second, he asserts that the aggravating factors the district court considered already were captured by the Sentencing Guidelines, so "an upward variance was not needed to fulfill the purposes of sentencing." Third, he argues that his sentence creates an unwarranted sentencing disparity because "the average and median prison sentences" for "similarly situated" defendants were 45 and 37 months.[3]

Under § 3553(a), a sentencing court must impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from future crimes of the defendant. 18 U.S.C.

---

[3] Carrington maintains that "similarly situated defendants, in this context, are non-career offender defendants convicted of an offense under U.S.S.G. § 2A2.2, with the same criminal history category and a sentencing range in Zone D. Carrington cites statistics from the United States Sentencing Commission in support of this contention. He does not, however, identify any specific cases addressing convictions or sentences under 18 U.S.C. § 113(a).

§ 3553(a). The court also must consider, *inter alia*, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. *Id.* Section 3553(a)'s "over-arching" instruction to courts is that federal sentences must be sufficient, but not greater than necessary, to comply with Congress's stated purposes. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). Instead, a "court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments" is typically sufficient to show it has considered the issues and arguments before it. *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)); *see also United States v. Leibowitz*, 676 F.3d 1000, 1016–17 (11th Cir. 2012) (citing *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007) ("A district court's failure to give mitigating factors the weight a defendant contends they deserve does not render the sentence unreasonable." (alterations adopted)))). One indicator of a reasonable sentence is a sentence that is well below the statutory maximum for the crime. *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014); *Gonzalez*, 550 F.3d at 1324 (same).

Though a sentencing court is required "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), "[a] well-founded claim of [unwarranted] disparity . . . assumes that apples are being compared to apples." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Mateo-Espejo*, 426 F.3d 508, 514 (1st Cir. 2005)). We have held that evaluating alleged sentencing disparities among similarly situated defendants requires "more than the crime of conviction and the total length of the sentences." *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015). "The underlying facts of the crime and all of the individual characteristics are relevant." *Id.* Thus, a broad claim that a defendant received an unwarranted sentence as compared to "similar . . . crimes [committed] elsewhere in the nation" is "difficult to gauge." *United States v. Hill*, 643 F.3d 807, 885 (11th Cir. 2011).

The district court also has "considerable discretion" to decide whether § 3553(a) factors justify a variance. *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). "The justifications must be 'compelling' enough 'to support the degree of the variance' and complete enough to allow meaningful appellate review." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The district court may vary upward based upon conduct already accounted for in the guideline range. *United States v. Oudomsine*, 57 F.4th 1262, 1268 (11th Cir. 2023); *see Butler*, 39 F.4th at 1355 (explaining that courts may impose upward variances based on relevant § 3553(a) factors).

Here, Carrington has not shown that his "sentence is unreasonable in light of the record and the § 3553(a) factors." *Gonzalez*, 550 F.3d at 1324.  As a threshold matter, his 84-month sentence is well below the statutory maximum of 120 months, which is an indicator of reasonableness. *Dougherty*, 754 F.3d at 1364; *Gonzalez*, 550 F.3d at 1324.  In addition, Carrington's three arguments do not demonstrate that the district court abused its discretion.

First, while Carrington contends that the district court gave insufficient weight to his mitigation evidence, our precedent allows district courts to attach great weight to one relevant factor over others. *Butler*, 39 F.4th at 1355.  District courts also need not explicitly discuss each piece of mitigating evidence to show that they considered them; we take a sentencing court at its word when it states that "it has considered the §3553(a) factors and the parties' arguments." *Id.*; *see also Amedeo*, 487 F.3d at 833; *Sarras*, 575 F.3d at 1219.  Regardless, the district court heard evidence about Carrington's mitigating factors before imposing its sentence and remarked that "Carrington is probably a very good father and cares about his family, [and is] a good provider," and that his conduct here was "aberrational."  However, the court concluded the facts of Carrington's case were "particularly egregious" and noted the significant damage and suffering borne by the victims.  *See* 18 U.S.C. § 3553(a)(2)(A).  It also emphasized multiple times that, but for Carrington's drug addiction and the fact that his addiction fueled his delusions precipitating the incident, Carrington would have received the maximum penalty for his charges.  Accordingly, the district court did not abuse its discretion in its handling of Carrington's

mitigation evidence; it considered that evidence but simply gave that evidence less weight than Carrington believes it should have. *Butler*, 39 F.4th at 1355; *Amedeo*, 487 F.3d at 833; *Leibowitz*, 676 F.3d at 1016–17; *Bungar*, 478 F.3d at 546.

Second, even though the district court considered some facts that were also captured in the Guidelines in imposing an upward variance, the court explained why it believed the Guidelines did not adequately account for those factors. *See Oudomsine*, 57 F.4th at 1268; *Butler*, 39 F.4th at 1355. Specifically, the district court found that Carrington's conduct was worse than other similarly charged cases it had seen, that the nature of the underlying conduct was worse than the Guidelines' general considerations contemplated, and that C.W. and S.S. were harmed to an extent not adequately reflected. Though the Guidelines are important in reaching a reasonable sentence, the district court is permitted to give other facts more weight than the Guidelines do if the circumstances warrant it. *See, e.g.*, *Rosales-Bruno*, 789 F.3d at 1254 ("'We have not attempted to specify any particular weight that should be given to the [G]uidelines range,' and we have rejected 'any across-the-board prescription regarding the appropriate deference to give the Guidelines.'" (first quoting *Irey*, 612 F.3d at 1217; and then quoting *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006))); *United States v. Olson*, 127 F.4th 1266, 1276 (11th Cir. 2025) ("A district court does not have to give all the factors equal weight . . . ."). On this record, the district court's conclusion—that the Guidelines did not adequately reflect extent of harm Carrington caused, nor account for the egregious nature of his offense—was not an abuse of discretion

either, especially because the district court specifically outlined which aspects were inadequately reflected in the Guidelines.

Third, while Carrington argues that his sentence creates an unwarranted sentencing disparity, he has not borne his burden to support that contention. *Gonzalez*, 550 F.3d at 1324. Carrington does not identify any offense-specific similarities between himself and other defendants who were sentenced to shorter terms of imprisonment. Indeed, he only points to statistics, not specific cases. Thus, his argument is similar to the broad and non-specific argument we rejected in *Hill*, *see* 643 F.3d at 885, because, apart from presenting national averages, Carrington does not show that any specific defendant who committed a similar offense received a shorter sentence. Considering the record, moreover, the district court did not abuse its discretion in finding the offense conduct unique; this offense certainly cannot be called "heartland" conduct for a violation of Section 113(a). *See Kimbrough*, 552 U.S. at 109 ("[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'" (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007))). Indeed, the district court explicitly considered and rejected the Guidelines range as insufficient for this exact reason: the "egregious" facts make the case different than the average assault case. *See id.* For these reasons, we find no abuse of discretion in this respect.

## IV. CONCLUSION

Our review of the substantive reasonableness of a sentence is deferential, and we ask only whether the sentence given was "in the ballpark of permissible outcomes." *Butler*, 39 F.4th at 1355 (quoting *Rosales-Bruno*, 789 F.3d at 1257); *see also United States v. Beaufils*, 160 F.4th 1147, 1163 (11th Cir. 2025) (explaining that the abuse of discretion "standard allows for a 'range of choice for the district court,' as long as that choice is not a 'clear error of judgment'" (citation omitted)). Carrington has not shown the district court abused its discretion or imposed an unreasonable sentence. Therefore, we affirm.

**AFFIRMED.**