**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12252

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

NICOLE DANIELLE DEVILBISS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court

for the Middle District of Florida

D.C. Docket No. 3:23-cr-00153-WWB-LLL-1

_____

Before BRANCH, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Nicole Danielle Devilbiss appeals her 51-month sentence for conspiracy to create and distribute animal crush videos, in violation of 18 U.S.C. §§ 371, 48(a)(2) & (3). On appeal, Devilbiss argues that

the district court clearly erred in applying an enhancement under U.S.S.G. § 3B1.1(a), making her ineligible for a reduction under U.S.S.G. § 4C1.1, and that her sentence is substantively unreasonable.  After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

A grand jury indicted Nicole Danielle Devilbiss with conspiracy to create and distribute animal crush videos, in violation of 18 U.S.C. §§ 371, 48(a)(2) & (3).  Devilbiss pled guilty.  Before sentencing, a probation officer prepared a presentence investigation report ("PSI") which described, at length, Devilbiss's offense conduct.  In short, between April 14, 2022, and May 23, 2023, Devilbiss was part of a Telegram[2] group that crowdfunded the creation of videos depicting the torture, mutilation, and murder of animals in other countries.

Relevant here, the PSI determined that Devilbiss should be subject to an enhancement, under U.S.S.G. § 3B1.1(a), because she was an organizer or leader of the criminal activity and the activity involved five or more participants or was otherwise extensive.  In support of this enhancement, the PSI reported that Devilbiss became the "head administrator" of the Telegram group in June 2022 and had the ability to remove individuals from the group.  Other participants referred to her as "the new owner" of the group, who would "run[] the show" and "call[] the shots," and she referred to

---

[1]. We write only for the parties, so we omit a lengthy recitation of the facts.

[2] Telegram is a cloud based multi-platform chat application.

herself as "currently the owner of the chat." She also explained that she had "the control to remove those" in the group that "lurk[ed] in the shadows." Devilbiss personally sent at least three payments to conspirators to fund the production and procurement of videos. In messages to the group, Devilbiss also discussed obtaining monkeys of her own to create videos, though she never followed through on that plan.

The PSI also provided mitigating information about Devilbiss's life and personal characteristics, including that she was the mother of three young children and that she suffered from ADHD, PTSD, major depressive disorder, anxiety, and opioid dependence disorder. It also noted that Devilbiss had been the victim of domestic violence on several occasions. Included with the PSI was a letter and public petition from an animal welfare group. The letter stated that it had thousands of signatures requesting Devilbiss receive the maximum sentence. The attached petition included many vulgar and derogatory comments, including statements calling Devilbiss "human waste" and stating that she "deserves to rot in hell" or face the death penalty for her conduct.

Devilbiss objected to the imposition of the organizer/leader enhancement under § 3B1.1(a). She argued that she was simply a participant in a Telegram group that engaged in the criminal conduct and that Telegram groups are democratic by design. Accordingly, though she held the name "administrator" within the group, she argued that this was a misnomer and insufficient for the organizer/leader enhancement. She also noted that there were three

other administrators in the Telegram group, suggesting that she did not have any more power over the group's content, name, membership, or finances than other members. She argued that, if the organizer/leader enhancement were removed, she would qualify for a reduction under U.S.S.G. § 4C1.1. Devilbiss argued for a sentence of 21 months' imprisonment in light of the factors in 18 U.S.C. § 3553(a).

At sentencing, Devilbiss reiterated her objections to the PSI's guidelines calculations. She also argued that the court should not consider the public petition which was submitted with the PSI. The court overruled her objection about the petition, noting that the petition was "relevant for what it's worth . . . but [would not be] the basis for [its] decision in this case." The government, which agreed that the court could consider the petition, also made clear that it was "not advocating for any of the positions expressed" in the petition.[3]

The court then returned to Devilbiss's guidelines objections. Devilbiss argued that, despite her title, her actions were similar to "that of every other . . . group member." The court expressed concern that Devilbiss was "effectively running this group, and the other group members saw her as the leader of the group." Devilbiss disagreed, noting that she did not have control over users, and only nominally had control over the group itself. The government submitted messages from the Telegram group chat showing

---

[3] The court agreed to remove any record of the petition from the public docket, reasoning that it should only be part of the sealed PSI.

instances where Devilbiss attempted to add people to the group, exercised control with other administrators, and led discussions about planning the group's activities. Based on Devilbiss's "statements and her activity, along with those of the others," the court found that the role enhancement applied, noting that Devilbiss "took a significant role in this organization and others saw her as such" and that she could properly be described as "a major role player without being the only role player." Therefore, it also overruled Devilbiss's objection regarding the zero-point offender reduction.

As a result, the court adopted the guidelines calculations and the factual statements in the PSI. Noting that the guidelines range was 41 to 51 months' imprisonment, the court asked the parties for their positions on what would be an appropriate sentence. Devilbiss argued that her personal characteristics were mitigating, including her struggles with opioid dependency, domestic violence, and a lack of mental health and psychological resources. The district court expressed that, while what Devilbiss had gone through was difficult, her conduct went "well beyond anything that was ever perpetrated on her." Devilbiss also stated that she was ashamed and embarrassed by her conduct and noted that others involved in the scheme—and similar schemes—had received short sentences. Devilbiss allocuted, apologizing to the animal rights activists, the animals, and to each person affected by her actions.

The government contended that Devilbiss's conduct was extremely aggravating, and it highlighted several of the messages she

had sent to the Telegram group.  It also argued that Devilbiss's devices contained numerous videos of violence against animals in "cruel," "depraved," "heinous," and "egregious" ways.  It further noted that Devilbiss's statements comparing humans to monkeys made Devilbiss "a danger" to humans as well as to animals.  It also argued there were important distinctions between the comparator cases Devilbiss cited and Devilbiss's own behavior.  It therefore asked for a sentence at the top end of the guidelines range.

The district court noted that it had considered the relevant factors in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense.  It explained:

> [T]his has to be one of the most serious, disturbing, sickening offenses that I have had to review or sentence someone on probably in my career on the bench, and I've seen some pretty bad stuff.  And it shows a level of depravity that really is rarely seen, and I find that your conduct in this case is really deplorable.

It added that it had considered Devilbiss's history and characteristics as well, including the fact that she had suffered abuse, which was "horrible" and "wrong on every level."  Still, the court concluded that it "just does not excuse this behavior."  Noting that its sentence also had to reflect the need for specific deterrence, general deterrence, and the need to protect the public, the court sentenced Devilbiss to 51 months' imprisonment.  It added that it had considered Devilbiss's sentencing disparity argument, but that "every

case is different," and the fact that Devilbiss had pled guilty, which was why it was not imposing the statutory maximum.

Devilbiss then reiterated her prior objections and objected to the substantive reasonableness of the sentence as well. The district court later entered a written judgment consistent with its oral rulings, and Devilbiss appealed.

## II. STANDARDS OF REVIEW

We follow a "two-step process" when reviewing a sentence. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we review the sentence for procedural reasonableness. In doing so, we determine "whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range . . . , failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 936 (footnote omitted). We review *de novo* the proper interpretation and application of the Sentencing Guidelines. *United States v. Pulido*, 133 F.4th 1256, 1279 n.20 (11th Cir. 2025). Yet we review the district court's underlying findings of fact for clear error. *Id.*; *see also United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004).

Clear error is a very deferential standard of review. *See, e.g.*, *OHI Asset (VA) Martinsville SNF, LLC v. Wagner (In re Wagner)*, 115 F.4th 1296, 1303 (11th Cir. 2024). Where a factfinder could permissibly have different views of the evidence, the factfinder's choice between those permissible views is not clear error. *See id.*; *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010). To

be clearly erroneous, a factual finding must leave us with a "definite and firm conviction that a mistake has been committed." *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021) (quoting *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010)). "If the district court's account of the evidence is plausible," considering the entire record, we may not substitute our own interpretation of the evidence for the district court's, even if we might have weighed the evidence differently ourselves in the first instance. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

In the second step of our "two-step process," we review "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors." *Trailer*, 827 F.3d at 935–36. "We review the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022). "[W]e will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (Opinion of E. Carnes, J.)). A party arguing a sentence is unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). "[W]e have identified three ways in which a district court can abuse its discretion" and "impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or

(3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (same).

## III. DISCUSSION

Devilbiss's arguments track onto our "two-step process" for analyzing the reasonableness of a sentence. *Trailer*, 827 F.3d at 935. We first address her procedural arguments, before turning to her challenge to the substantive reasonableness of her sentence.

### A. Procedural Reasonableness

Devilbiss raises the same two procedural reasonableness arguments she made at sentencing: one regarding U.S.S.G. § 3B1.1(a) and one regarding U.S.S.G. § 4C1.1. As to § 3B1.1(a), she argues the district court erred in applying the four-level enhancement for both legal and factual reasons. As a matter of law, Devilbiss contends, she solely managed conspiracy assets, not participants, so the enhancement does not apply. Alternatively, she contends that the district court clearly erred as a matter of fact in finding that she was an organizer or leader of the criminal activity.

Second, as to § 4C1.1, Devilbiss argues that the district court erred in failing to give her a two-level reduction as a zero-point offender. She concedes, however, that if we disagree with her on her argument about § 3B1.1(a), she cannot prevail on her argument under § 4C1.1. *See* U.S.S.G. § 4C1.1(a)(10) (2023) (providing that a

defendant is not eligible for a "zero-point offender[]" adjustment if the defendant "receive[s] an adjustment under § 3B1.1").[4]

Section 3B1.1(a) provides that a "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a); *see also United States v. Horn*, 129 F.4th 1275, 1294 (11th Cir. 2025).

> In considering who is a leader or organizer, titles are not controlling; rather, we consider the following factors: "[(1)] the exercise of decision making authority, [(2)] the nature of participation in the commission of the offense, [(3)] the recruitment of accomplices, [(4)] the claimed right to a larger share of the fruits of the crime, [(5)] the degree of participation in planning or organizing the offense, [(6)] the nature and scope of the illegal activity, and [(7)] the degree of control and authority exercised over others."

*Horn*, 129 F.4th at 1294 (alterations in original) (quoting *United States v. Grushko*, 50 F.4th 1, 16 (11th Cir. 2022)).  Still, we have "been clear that 'these factors are merely considerations for the sentencing judge, who makes the factual determinations for the applicability of the § 3B1.1 enhancement on a case-by-case basis, and we give deference to the factfindings of the sentencing judge.'"  *Id.* (quoting *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir.

---

[4] The government argues that any errors on either of these two issues are harmless, but, because we find the district court did not err, we need not assess whether any such error was harmless.

24-12252              Opinion of the Court                    11

2005)); *see also United States v. Rendon*, 354 F.3d 1320, 1332 (11th Cir. 2003) (explaining that a district court "must exercise its best judgment as to the application of the facts to these standard, its decision is entitled to one of deference on appeal" (quoting *United States v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002))).

To begin, we reject Devilbiss's argument that, as a matter of law, she only managed the Telegram group platform, not actual participants. The district court findings—and the way in which the group operated—directly contradict this contention. The facts show that Devilbiss exercised her administration authority to deny potential participants access to the group, to remove participants from the group, to enforce the rules of the group, and to moderate the content shared within the group. Because the Telegram group functioned as the platform for the conspiracy's activities, her control of the platform operated as control over who was participating in the conspiracy; not mere control over the conspiracy's assets. *Contra United States v. Glover*, 179 F.3d 1300, 1301 (11th Cir. 1999) (concluding that mere control over controlled substances, without more, did not warrant a role enhancement because there was no control over the participants). We therefore reject her front-line legal position.

Next, we conclude that the district court did not clearly err in its factual findings or its analysis of the relevant factors from our caselaw. *See Horn*, 129 F.4th at 1294; *Grushko*, 50 F.4th at 16. Even if other members of the group may have had a similar ability to enforce rules, fundraise, and participate in the Telegram group,

Devilbiss held herself out as the "lead administrator" and exercised her authority as such to exercise decision-making choices for the group. *See Vallejo*, 297 F.3d at 1169 ("The defendant does not have to be the sole leader or kingpin of the conspiracy in order to be considered an organizer or leader within the meaning of the Guidelines."). Of course, Devilbiss's title as lead administrator, alone, is not dispositive, *see United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) ("[I]n distinguishing a leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling." (quoting U.S.S.G. § 3B1.1, comment. (n.4))), but it is relevant to several of the factors we have identified, *see Horn*, 129 F.4th at 1294. The title was also not a mere formality; participants in the conspiracy, likewise, viewed her as "in charge" of the group and managing the operations of the conspiracy writ large. In fact, one of Devilbiss's own messages stated that she "ha[d] control to remove" members from the Telegram group, and she exercised that authority by removing members and denying other potential conspirators access to the group.

All these facts suggest that Devilbiss had "control and authority exercised over others," supporting the district court's imposition of the enhancement. *Id.* at 1294. Even if a reasonable factfinder might have come to a different conclusion about the best interpretation of the numerous messages from the Telegram that were submitted into the record, the district court's interpretation was certainly "plausible." *Anderson*, 470 U.S. at 573–74; *see also United States v. Brown*, 415 F.3d 1257, 1270 (11th Cir. 2005) ("Questions about the weight given to testimony . . . are for the

factfinder.").  That conclusion forecloses Devilbiss's argument under clear error review.

In light of the foregoing, Devilbiss has not shown error in the district court's finding that she was an organizer or leader of the criminal activity and, accordingly, by enhancing her offense level by four under U.S.S.G. § 3B1.1(a).  As a result of that correct ruling, Devilbiss was also, as she concedes, properly denied a two-level reduction as a zero-point offender.  *See* U.S.S.G. § 4C1.1(a)(10).  We therefore affirm as to both issues.

### B.  *Substantive Reasonableness*

Devilbiss next argues that her sentence is substantively unreasonable.  She contends that the district court gave "significant weight" to its own "revulsion over the offense" and to public outrage, and that the court unreasonably balanced the relevant factors.  She asserts that the petition, which she objected to, reflected serious "public ire towards" her, which was an improper consideration under § 3553(a) which should have been given little to no weight.  She also argues the court failed to give sufficient weight to her mitigation evidence and the need to avoid unwarranted sentencing disparities.

Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . to afford adequate deterrence," and "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).  The court also must consider,

among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (6).

While advisory, the Sentencing Guidelines are the starting point that a sentencing court must consider. *Gall v. United States*, 552 U.S. 38, 49 (2007). Given their important role in the federal sentencing process, "we ordinarily expect sentences within the advisory guidelines range to be reasonable." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009); *see also United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007); *see also United States v. Al Jaberi*, 97 F.4th 1310, 1330 (11th Cir. 2024). "Rather, a district court's acknowledgment that it has considered the §3553(a) factors and the parties' arguments is sufficient." *Butler*, 39 F.4th at 1356 (citing *Sarras*, 575 F.3d at 1219).

Based on the record, Devilbiss has not shown that her sentence is unreasonable. *Gonzalez*, 550 F.3d at 1324. The district

court's selected sentence was within the guidelines range, which we have concluded was correctly calculated, an indicator of reasonableness. *Sarras*, 575 F.3d at 1220; *Hunt*, 526 F.3d at 746. In addition, contrary to Devilbiss's arguments, the district court did not "fail[] to properly consider a relevant sentencing factor . . . giv[e] significant weight to" an irrelevant factor, nor "commit[] a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *Irey*, 612 F.3d at 1189.

The district court described Devilbiss's offense as "deplorable" and "one of the most serious, disturbing, sickening offenses" that it had seen, and that her behavior reflected "a level of depravity that is rarely seen . . . ." While Devilbiss suggests that these comments show the district court focused too much on her offense conduct, the district court does not have to give each factor the same weight, it has discretion to give great weight to relevant factors. *Butler*, 39 F.4th at 1355; *see also United States v. Olson*, 127 F.4th 1266, 1276 (11th Cir. 2025) ("A district court does not have to give all the factors equal weight . . . ."). Nor can it be argued that Devilbiss's offense conduct was not a relevant sentencing factor; Congress has instructed sentencing courts to consider the details of a defendant's crime in choosing a sentence. *See* 18 U.S.C. § 3553(a)(1), (2) (instructing sentencing courts to consider "the nature and circumstances of the offense" and "the seriousness of the offense").

To the extent that Devilbiss argues that the district court erred in considering the petition and the public fury represented therein, we do not discern an abuse of discretion because the

district court did not rely on it.  The district court explained that the petition was only "relevant for what it's worth" and that it would "not . . . be the basis for" its sentence.[5]  "[W]e take the district court at its word."  *United States v. Rodgers*, 166 F.4th 134, 139 (11th Cir. 2026) (quoting *United States v. Schwarzbaum*, 24 F.4th 1355, 1364 (11th Cir. 2022)).  While Devilbiss argues that the district court must have considered the contents of the petition despite this disclaim because it then described her offense conduct as "serious, disturbing, [and] sickening," we disagree.  The court's comments were, as noted above, its conclusions about the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), not evidence that the court relied on evidence that it said would not be the basis for its sentence, *see, e.g.*, *United States v. Kapordelis*, 569 F.3d 1291, 1318–19 (11th Cir. 2009) (explaining that, though the court "commented on" a factor the defendant argued was impermissible, the court did not base its decision on that ground).  Nor did the district court abuse its discretion in describing Devilbiss's offense conduct as disturbing and sickening.  We allow district courts to reach some conclusions at sentencing "based on common sense and ordinary human experience."  *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021) (quoting *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013)).

---

[5] The government similarly explained that it was "not advocating for any of the positions expressed" in the petition, further suggesting the court did not impermissibly rely on it.

While a district court was not required to explicitly address Devilbiss's mitigation evidence and arguments in reaching its conclusion, *Amedeo*, 487 F.3d at 833; *Butler*, 39 F.4th at 1355, it did so here, but found that this mitigation evidence did "not excuse" her behavior. Because "the weight given to each factor is committed to the sound discretion of the district court," the court did not err simply by failing to give this mitigation evidence the weight that Devilbiss would have preferred. *Butler*, 39 F.4th at 1355; *see also Olson*, 127 F.4th at 1276.

Finally, though a sentencing court is required "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), "[a] well-founded claim of [unwarranted] disparity . . . assumes that apples are being compared to apples." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Mateo-Espejo*, 426 F.3d 508, 514 (1st Cir. 2005)). Thus, evaluating alleged sentencing disparities among similarly situated defendants requires "more than the crime of conviction and the total length of the sentences." *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015). "The underlying facts of the crime and all of the individual characteristics are relevant." *Id.* Devilbiss has not shown an unwarranted disparity. As she concedes, another administrator in her group received a 48-month sentence, which is a very similar sentence to the one she received. While Devilbiss identifies some defendants from district courts around the country who committed somewhat similar crimes and received shorter sentences, these cases all appear to involve smaller conspiracies. In

any event, we have concluded that a broad claim that a defendant received an unwarranted sentence as compared to "similar . . . crimes [committed] elsewhere in the nation" is "difficult to gauge." *United States v. Hill*, 643 F.3d 807, 885 (11th Cir. 2011). Accordingly, the district court did not abuse its discretion in concluding that Devilbiss "was not entitled to a less severe sentence based on the sentences received by" these other defendants. *Docampo*, 573 F.3d at 1102.

On balance, Devilbiss's offense conduct was, as the district court explained, extremely aggravating. In light of that fact, the record, and the other relevant factors, the district court's decision to impose a within-guidelines 51-month sentence does not show a choice outside "the ballpark of permissible outcomes." *Butler*, 39 F.4th at 1355 (quoting *Rosales-Bruno*, 789 F.3d at 1257). Accordingly, we affirm her sentence as substantively reasonable as well.

### IV. CONCLUSION

For the reasons provided, Devilbiss has not shown that her sentence is procedurally or substantively unreasonable. Accordingly, we affirm.

**AFFIRMED.**